IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MELANIE INFINGER, Individually, § <br> and as Representative of § <br> the Estate of, CAITLYNNE § <br> GUAJARDO, decedent, and § <br> as Next Friend of, ALEXIS § <br> GUAJARDO, a minor, § <br> § <br> Plaintiff, § <br> § <br> VS. § <br> § <br> HARRIS COUNTY, TEXAS § <br> § <br> JAMES CALLAN, § <br> COURTNEY ST. JULIAN, § <br> LISA PORTER § <br> DIANA OLVERA § <br> CHERYL DIGGS § <br> EVA FLORES § <br> LIONEL CASTRO § <br> JOHN BOONE § <br> CYNTHIA HENLEY § <br> CAROL CARRIER § <br> § <br> ALEX SALDAGO, § <br> RONNISHA BOWMAN, § <br> ERICA HUGHES, § <br> SHANNON BALDWIN, § <br> DAVID FLEISCHER, § <br> KELLEY ANDREWS, § <br> ANDREW WRIGHT, § <br> FRANKLIN BYNUM, § <br> TORIA FINCH, § <br> LEE HARPER WILSON, § <br> SEDRICK WALKER, II, § <br> GENESIS DRAPER, § <br> RAUL RODRIGUEZ, § <br> DAVID SINGER, § <br> TONYA JONES and § <br> DARRELL JORDAN, § <br> § <br> Defendants. § | Civil Action No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**MONETARY DAMAGES AND DECLARATORY RELIEF**

COMES NOW, Plaintiff MELANIE INFINGER, Individually, as Representative of the Estate of, CAITLYNNE GUAJARDO, decedent, and as Next Friend of ALEXIS GUAJARDO, a minor, and files this action by and through undersigned counsel, and in support thereof would respectfully show unto the Court the following:

**INTRODUCTION**

1.01. On August 3, 2019, Caitlynne Guajardo and her unborn child were brutally stabbed to death in cold blood by her soon-to-be ex-husband, Alex Guajardo. Repeat criminal offender Guajardo, despite already being out on multiple personal recognizance bonds, was granted yet another PR bond by Defendant James "Jim" Callan less than 24 hours prior to the murders.

1.02.   This case is being brought pursuant to 42 U.S.C. § 1983 and laws of the state of Texas to vindicate Caitlynne Guajardo's rights (and the rights of her unborn child) under the Fourteenth Amendment of the Constitution of the United States and the Constitution of the State of Texas.

1.03.   Caitlynne Guajardo's death was a direct result of the act and/or omissions of Defendant Harris County, Texas and its overhaul of the criminal bail system, which not only places the rights of those accused of a crime over the rights of law-abiding citizens, but also amounts to violations of state law. Under the guise of improving a Harris County bail system that unfairly targets the poor, Defendants have created a new system whereby those accused of crimes are released—oftentimes repeatedly—on personal recognizance ("PR") bonds, resulting, not surprisingly, in an increased crime rate, danger and uncertainty for the law-abiding citizens of Harris County.

1.04.   In 2020, 18,796 defendants were charged in Harris County with new felonies and misdemeanors while out on bond, a number that has tripled since 2015, county data shows.

1.05.   The Houston Chronicle reviewed murder cases in Harris County from 2013 to 2020 and identified 231 deaths linked to a defendant previously charged with crimes and out on bond. The review found that 79 individuals were free on multiple bonds, misdemeanor or felony, before the murder charge and of those, 38 defendants were out on multiple felony bonds.

1.06.   County data showed the number of individuals out on bond while being charged with new crimes, including murder charges, added up to more than 63,370 defendants since 2015.

1.07.   With no input from the Supreme Court of Texas or the Texas Legislature, Defendants have implemented policies that eliminate the ability of judges in Harris County to make case-by-case determinations regarding the proper bail for most criminal defendants, raising serious federalism and separation-of-powers concerns.

1.08.   As a result of these illegal reforms, Caitlynne Guajardo and her unborn child were brutally killed at the hands of Alex Guajardo who was released on a PR bond.  But for these illegal reforms, Alex Guajardo would not have been released on a PR bond, and Caitlynne Rose Guajardo and her unborn child would be alive today.

**PARTIES**

2.01.   Plaintiff Melanie Infinger**,** an individual residing in Harris County, Texas, sues in her individual capacity, as Representative of the Estate of her daughter Caitlynne Guajardo, decedent, and as Next Friend of her granddaughter Alexis Guajardo, a minor.

2.02.   Defendant Harris County, Texas, a county in state of Texas, may be served with process by serving the county judge, Honorable Lina Hidalgo, at 1001 Preston, Suite 911, Houston, Texas 77002.

2.03. Defendants James Callan, Courtney St. Julian, Lisa Porter, Diana Olvera, Cheryl Diggs, Eva Flores, Lionel Castro, John Boone, Cynthia Henley, Carol Carrier, are Harris County's Criminal Law Hearing Officers ("Magistrates"). They are being sued in their individual and official capacities, and may be served with process by serving the county judge, Honorable Lina Hidalgo, at 1001 Preston, Suite 911, Houston, Texas 77002.

2.04. Defendants, Alex Saldago, Ronnisha Bowman, Erica Hughes, Shannon Baldwin, David Fleischer, Kelley Andrews, Andrew Wright, Franklin Bynum, Toria Finch, Lee Harper Wilson, Sedrick Walker, II, Genesis Draper, Raul Rodriguez, David Singer, Tonya Jones and Darrell Jordan, are Harris County's Criminal Court at Law Judges ("HCCCL Judges"). They are being sued in their individual and official capacities, and may be served with process by serving the county judge, Honorable Lina Hidalgo, at 1001 Preston, Suite 911, Houston, Texas 77002.

## JURISDICTION AND VENUE

3.01. Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4), as well as under 42 U.S.C. § 1983. Furthermore, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. § 1367.

3.02. Venue is proper under 28 U.S.C. §1391 as the acts and omissions giving rise to the Plaintiff's claims occurred within the Southern District of Texas.

## NATURE OF THE ACTION

4.01. Harris County has enacted a policy which changed state law in Texas. Rule 9 (9.12.6) of the Rules of Court for the Harris County Criminal Courts at Law states in part:

> If the judicial officer requires money bail as a condition of release, the money bail order must be accompanied by substantive findings on the record that are reviewable by a higher court. The findings must be that, by clear and convincing evidence: (1) the arrestee has the ability at the time of the hearing to pay the amount required, or (2) that the arrestee does not have the ability to pay the amount required, but alternative conditions of release were considered, no less-restrictive condition or combination of conditions could reasonably

4

assure the safety of the community or reasonably protect against flight from prosecution, and imposition of unaffordable money bail is necessary to reasonably assure the safety of the community or to reasonably protect against flight from prosecution. These findings and procedures must be provided if the court imposes an order of pretrial detention, either through an unattainable financial condition or directly through an order of pretrial detention.

4.02. Rule 9 substantively changed the rules for setting bail in Harris County, Texas by, *inter alia*, making the requirements for surety bail much more stringent. Instead of allowing the magistrate to set bail based upon the judge's discretion under Texas law, Harris County raised the standard for setting bail and the use of anything other than a PR bond to a standard of clear and convincing evidence making it difficult for judges to keep dangerous people detained and off the streets.

4.03. As a direct result of the acts and/or omissions of Defendant Harris County, including but not limited to the implementation of Rule 9, Caitlynne Guajardo and her unborn child were fatally injured on August 3, 2019.

4.04. Plaintiff seeks to recover from Defendant Harris County all monetary damages arising from the wrongful death of Caitlynne Guajardo and her unborn child.

4.05. Plaintiff also seeks declaratory relief against all Defendants as requested hereinbelow.

## FACTUAL ALLEGATIONS

5.01. On May 6, 2019, Alex Guajardo, a resident of Pasadena, Texas, was arrested for a DWI-2nd and later granted a PR bond.

5.02. On July 31, 2019, after beating his wife Caitlynne Guajardo, Alex Guajardo was arrested again, this time for assault-family member. On August 1, 2019, the trial court entered a protective order for Caitlynne and released Guajardo on another PR bond.

5.03.  On August 3, 2019, Guajardo was arrested yet again, this time on charges of capital murder.  His pregnant wife, Caitlynne, was the victim of Guajardo's vicious attack, in which she was stabbed 20 times, killing both her and her unborn child.

5.04.  Guajardo reported to investigators that he intentionally stabbed Caitlynne in the abdominal area to make certain that no other man would raise his child.  He was denied bond for the charge of capital murder.  But amazingly, on August 11, a General Order PR bond was entered in the assault-family member case and on August 12, another General Order PR bond was entered in his DWI-2nd case.  In other words, but for the no-bond on his capital murder charge, Guajardo would have been released yet again.

5.05.  Guajardo's release was a direct result of the county's improper settlement in a case entitled, No. 4:16-dv-1414; *Maranda ODonnell v. Harris County, et. al.*; In the United States District Court for the Southern District of Texas, Houston Division.

5.06.  In *ODonnell*, the plaintiffs sued the county, the sheriff and the misdemeanor judges over the use of a bail schedule to facilitate the release of defendants charged with misdemeanor offenses.  The plaintiffs alleged that the amount of money required for release of misdemeanor arrestees was determined by a generic offense-based bail schedule, and that it was the policy and practice of Harris County officials to impose the scheduled amount without considering the individual's ability to pay.

5.07.  The trial court found that the lack of procedures violated the federal constitution's due process protections and entered two preliminary injunctions. The injunctions were appealed to the Fifth Circuit which later issued multiple opinions reversing and/or staying the trial court's orders.  In the first appeal, the Fifth Circuit held that the preliminary injunction issued by the trial court was overly broad, and that since the violation was procedural, the relief must too be

6

procedural. In August 2018, the Fifth Circuit stayed portions of a second preliminary injunction holding that there is no fundamental right to be free from any form of wealth-based detention. Additionally, the Fifth Circuit held that once procedures were in place, the review by the federal courts reverted to a rational basis review.

5.08. After the November 2018 election, all but one of the 16 judges were replaced with judges who campaigned on promises to settle the suit. As a part of settlement negotiations, the 16 misdemeanor judges adopted Local Rule 9, which substantially modified bail practices in Harris County.

5.09. The new policy no longer relied upon the use of a bail schedule. Instead, the policy adopted a new system for release of misdemeanor defendants in Harris County. The new policy—referred to by some as "simple release"—ordered the release of 85 percent of all defendants (without seeing a magistrate) on a PR bond which would be arbitrarily set at $100.00 without taking into account the criminal history of the defendant and without making any individual assessment of the factors set out in article 17.15 of the Texas Code of Criminal Procedure. Under the new policy, only defendants arrested for a specific list of approximately 7 offenses are required to be seen by a magistrate. Even then, instead of bail being set based upon the discretion of the magistrate, under the new bail policy, the magistrate is required to apply a clear and convincing evidence standard before he or she can require anything other than simple release of the defendant.

5.10. The settlement in *ODonnell* also created a "General Order Bond" which is not recognized under Texas law. The settlement authorizes the sheriff to release a defendant if a hearing is not held within a certain time period, despite the Fifth Circuit having previously held that there is no right to release, but rather a right to an individualized hearing.

5.11. Though touted as a lawsuit aimed at protecting the rights of the poor, in reality, the *ODonnell* settlement was simply a vehicle used by its proponents to overhaul the entire bail system through the implementation of a new system of pretrial release that applied to everyone—without regard to an individual's financial status or ability to make bail. But because the *ODonnell* settlement decree was not authorized by the Texas legislature, was not litigated, and was based, in part, on procedures that had been rejected by the Fifth Circuit, it is not entitled to blanket Supremacy Clause protection.

5.12. Texas law recognizes three types of bonds: surety bonds, cash bonds and PR bonds. The only type of release in Texas that is guaranteed by the Texas Constitution is by "sufficient sureties." Tex. Cost. art. 1, §11. Generally, bail is set at the discretion of the magistrate and will not be overturned on appeal except for an abuse of discretion. Certain limited offenses specifically set out in the Texas Constitution allow for preventative detention and these offenses require certain findings based upon a preponderance of the evidence. *Id*. at §11b, 11c.

5.13. However, local rule 9 changes longstanding Texas law by requiring magistrates to make findings of fact based upon clear and convincing evidence before a surety bond may be issued. See Rules of Court, Harris County Criminal Courts R. 9.16.6.

5.14. As stated, the parties in *ODonnell* entered into a settlement agreement that included the aforementioned revisions to local rule 9. The federal court then approved the settlement in a consent decree. However, the consent decree is not entitled to Supremacy Clause protection.

5.15. The trial court in *ODonnell* did not have the authority to grant some or all of the relief contained in the settlement. To the extent a consent decree contains elements that differ from or go beyond what a court could order in a litigated judgment, it has no more force than any other agreement between a government official and a private party. *See System Federation v. Wright*,

364 U.S. 642, 651 (1961) ("the District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce").

5.16. Additionally, in many respects the consent decree granted relief that was foreclosed by opinions which had been issued by the Fifth Circuit stemming from appeals in the *ODonnell* matter.

5.17. In the present case, Alex Guajardo was arrested multiple times. When he was first arrested, he was not even seen by a magistrate, but instead, was simply released on a $100 PR bond. (So long as Mr. Guajardo was not arrested for an offense on a certain carve out list, he was not required to be seen by a magistrate).

5.18. When Mr. Guajardo was ultimately arrested for an offense that required him to go before a magistrate, under local rule 9.16.6, the magistrate and/or trial court did not have any discretion to order the setting of a surety bond, even though his history showed a clear pattern of increasing violence. Indeed, the policy prevented the magistrate from setting bail based upon the magistrate's discretion and Texas law. Instead, the magistrate was only allowed to set a surety bond based upon clear and convincing evidence that no other alternative would be sufficient.

5.19. This flies in the face of well established Texas state law that courts are not vested with the discretion to require one type of bond to the exclusion of another. *Ex Parte Rodriguez*, 583 S.W.2d 792 (Tex. Crim. App. 1979). Indeed, articles 17.01, 17.02 and 17.15 of the Texas Code of Criminal Procedure confer upon the magistrate and/or trial court broad discretion in setting the amount of bail, provided that the discretion is reasonably exercised.

5.20. The policy adopted by Harris County improperly changed the law in Texas by stripping courts of the ability to make case-by-case determinations regarding what constitutes

proper bail. Instead, the policy requires that defendants be simply released unless clear and convincing evidence established that a PR bond would not be sufficient.

5.21. Defendants' individual and collective actions and/or omissions actually and proximately caused the death of Caitlynne Guajardo. Accordingly, Plaintiff, Melanie Infinger, Individually, as Representative of the Estate of Caitlynne Guajardo, decedent, and as Next Friend of Alexis Guajardo, a minor, are entitled to damages as prayed for hereinbelow.

**COUNT I**
**VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENTS IV AND XIV, 42 U.S.C. § 1983, DEPRIVATION OF DUE PROCESS, AND VIOLATION OF EQUAL PROTECTION CLAUSE**

6.01. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

6.02. This is an action brought against Defendants pursuant to the United States Constitution Amendments IV and XIV, in violation of 42 U.S.C. § 1983.

6.03. Defendants were acting under color of state law when they approved a settlement that violated Texas law. Defendants do not have the power of the Texas legislature and they do not have the authority to enact changes to Texas law that apply only to Harris County. Further, this conduct on the part of Defendants deprived the Plaintiff of rights, privileges and/or immunities guaranteed under the United States Constitution and by other laws of the United States.

6.04. As a direct and proximate result of Defendants' acts and/or omissions, Caitlynne Guajardo was deprived of the rights guaranteed to her by the Fourth and Fourteenth Amendments of the United States Constitution. In particular, Caitlynne Guajardo was deprived of her right to life, liberty, bodily integrity, due process of law, the right to be free of further crime by her attacker, the right to be treated equally without regard to race, and the right to public safety.

**COUNT II**
**CUSTOM/POLICY AND/OR PATTERN AND PRACTICE OF VIOLATION OF UNITED STATES CONSTITUTION, AMENDMENTS IV AND XIV, 42 U.S.C. § 1983, USE OF EXCESSIVE FORCE, DEPRIVATION OF DUE PROCESS, AND VIOLATION OF EQUAL PROTECTION CLAUSE**

7.01. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

7.02. This is an action brought against Defendants pursuant to the United States Constitution Amendments IV and XIV in violation of 42 U.S.C. §1983 and §1988.

7.03. Prior to August 3, 2019, Defendants developed and maintained customs and policies and/or patterns and practices that exhibited deliberate indifference to the constitutional rights of persons in the community. One such example was Defendants' enactment of local rule 9 which resulted in a bail system where the rights of accused criminals such as Alex Guajardo reign superior to that of law abiding citizens such Caitlynne Guajardo. The systemic violations of Texas state law constitute a widespread pattern sufficient to notify Defendants of same, and were obvious, flagrant, rampant and not isolated occurrences.

7.04. Defendants maintained a custom and policy and/or pattern and practice for the release of misdemeanor defendants which violated state law, deprived due process to alleged victims, failed to adequately and properly train magistrate judges to follow Texas law, and failed to conduct fair and impartial magistration taking into consideration the requirements of state law set out in article 17.15 of the Texas Code of Criminal Procedure.

7.05. Harris County has a history of failing to follow state law. This failure resulted in Caitlynne Guajardo's constitutional rights being violated—pursuant to the United States Constitution Amendments IV and XIV—and ultimately depriving her of her right to life.

7.06. The above facts denote a deliberate indifference on the part of Defendant policy makers and custom enforcers, to uphold the constitutional rights of citizens of Harris County including decedent Caitlynn Guajardo; in particular citizens' right to be free from local rules that violate Texas law, to be treated equally without regard to race under the equal protection clause, and not to be denied due process of law.  Defendants' deliberate indifference to decedent's rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution actually and proximately caused the violations of said rights which ultimately resulted in her untimely death.

## COUNT III
## WRONGFUL DEATH

8.01. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

8.02. Melanie Infinger and Alexis Guajardo, as mother and daughter of decedent, are proper wrongful death beneficiaries entitled to bring this action pursuant to Title 4, Chapter 71, Subchapter A of the Texas Civil Practice and Remedies Code, Texas Wrongful Death statute.

8.03. During her short time on this earth, Caitlynne brought incalculable joy to the lives of those she held near and dear to her heart, including her mother Melanie and daughter Alexis. As a result of Defendants acts and/or omissions, Melanie and Alexis's lives were changed forever when twenty (20) year old Caitlynne was violently taken from them.

8.04. Defendants are liable for the actual damages arising from the conduct that caused Caitlynne's death.

8.05. Defendants' wrongful acts proximately caused Caitlynne's death and she would have been entitled to bring an action for her injuries had she lived.

8.06. As a proximate result of Defendants' conduct, which caused Caitlynne Guajardo's untimely death, Plaintiff is entitled to recover an amount in excess of the minimum jurisdictional limits of this Court.

## COUNT IV
## SURVIVAL ACTION

9.01. Plaintiff realleges and incorporates by reference the allegations set forth in all preceding paragraphs as if set forth fully and reiterated here in their entirety.

9.02. Plaintiff Melanie Infinger is entitled to and does bring this action in such representative capacity pursuant to Title 4, Chapter 71, Subchapter B of the Texas Civil Practice and Remedies Code, the Texas Survival statute.

9.03. Caitlynne would have been entitled to bring an action for her injuries had she lived.

9.04. As a proximate result of Defendants' conduct, which caused Caitlynne Guajardo's untimely death, Plaintiff is entitled to recover an amount in excess of the minimum jurisdictional limits of this Court.

## REQUEST FOR TRIAL BY JURY

10.01. Plaintiff Melanie Infinger, Individually, as Representative of the Estate of Caitlynne Guajardo, decedent, and as Next Friend of Alexis Guajardo, a minor, hereby demands a trial by jury on all issues so triable.

## DAMAGES

11.01. As a direct and proximate result of Defendants' conduct, Plaintiff sustained the following damages:

    (a)    Past and future mental anguish;

    (b)    Past and future pain and suffering;

    (c)    Past and future loss of consortium;

(d)     Loss of past and future financial contributions;

(e)     Loss of earnings and net accumulations;

(f)     Loss of past and future services;

(g)     Loss of advice, care and counsel;

(h)     Loss of society and companionship;

(i)     Funeral and burial expenses;

(j)     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

(k)     Costs of court;

(l)     Punitive and/or exemplary damages to the extent allowed by law, as found by the trier of fact; and

(g)     Any and all other and further relief as this Court may deem appropriate.

## REQUEST FOR DECLARATORY RELIEF

12.01. In sum and substance, the *ODonnell* consent decree is a codification of many of the trial court's preliminary injunction rulings. And although many of the trial court's pronouncements in the preliminary injunctions were rejected by the Fifth Circuit Court of Appeals, those pronouncements were nevertheless incorporated into the settlement decree and ultimately Rule 9.

12.02. Based on the foregoing facts and circumstances, Plaintiff seeks declaratory relief pursuant to both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202, and respectfully requests that the Court determine and declare:

(a)     The *ODonnell* settlement agreement and Rule 9 of the Rules of Court for the Harris County Criminal Courts at Law ("Rule 9") violate the mandate rule, in that they did not follow both the letter and spirit of the Fifth Circuit's opinion when it remanded the case to the trial court.

(b)     The *ODonnell* settlement agreement and Rule 9 call for the outright elimination of secured bail for certain classes of defendants.

(c)     The Fifth Circuit held that any such elimination of secured bail for certain classes of defendants was improper.

(d) The *ODonnell* settlement agreement and Rule 9 include a right to release from jail.

(e) The Fifth Circuit held that no such right to release from jail "is in view".

(f) Under the *ODonnell* settlement agreement and Rule 9, wealth-based detention is impermissible.

(g) The Fifth Circuit ruled that some wealth-based detention was permissible and was contemplated.

(h) The *ODonnell* settlement agreement and Rule 9 relief was not narrowly tailored to address the alleged constitutional deficiencies. Rather, it was outside the deficiencies identified in the plaintiffs' complaint and as a result outside the confines of the narrow remand from the Fifth Circuit.

(i) Because the *ODonnell* settlement agreement and Rule 9 relief were not narrowly tailored to address the alleged constitutional deficiencies, the trial court had no authority to grant such relief.

(j) The *ODonnell* settlement agreement and Rule 9 require the release of an individual accused of a crime if the accused is not provided a hearing within 48 hours of arrest.

(k) The requirement that an individual accused of a crime be released if there is no hearing within 48 hours of arrest is in direct contravention of the Fifth Circuit's dictates which stated that the proper remedy under procedural due process requirements was to make weekly reports and to notify the detainees' counsel and next of kin of the delays.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff MELANIE INFINGER, Individually, as Representative of the Estate of, CAITLYNNE ROSE GUAJARDO, decedent, and as Next Friend of ALEXIS GUAJARDO, a minor, prays that citation be issued and served upon all named Defendants, and that upon trial of this cause, Plaintiff have recovery of all damages sought herein and for such other relief at law or equity to which Plaintiff may be justly entitled.

15

Respectfully submitted,

*/s/ Brian N. Mazzola*
Brian N. Mazzola
Texas State Bar No. 24037053
Mazzola Law Firm, PLLC
505 W. Lucas Drive
Beaumont, Texas 77706
Phone: (409) 898-0690
Fax:    (409) 283-7970
bmazzola@mazzolalawfirm.com

Benjamin J. Crump (*pro hac vice pending*)
Ben Crump Law, PLLC
122 S. Calhoun St.
Tallahassee, FL 32301
Phone: (850) 224-2020
Fax:    (850) 224-2021
ben@bencrump.com

ATTORNEYS FOR PLAINTIFF